IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SPLIT PIVOT, INC.,

                Plaintiff,                OPINION & ORDER

v.

                                                    12-cv-639-wmc

TREK BICYCLE CORPORATION,

                Defendant.

---

        In this patent infringement action, plaintiff Split Pivot, Inc., alleged that defendant Trek Bicycle Corporation ("Trek") had infringed its U.S. Patent Nos. 7,717,212 and 8,002,301. Following cross-motions for summary judgment, the court granted Trek judgment for non-infringement as a matter of law on the undisputed facts. *Split Pivot, Inc. v. Trek Bicycle Corp.*, 987 F. Supp. 2d 838 (W.D. Wis. 2013). The Federal Circuit affirmed this judgment without opinion on December 8, 2014. *Split Pivot, Inc. v. Trek Bicycle Corp.*, 585 F. App'x 1011. Remaining before the court for decision are Split Pivot's objections to Trek's bill of costs.[1] (Dkt. #242). For the reasons explained below, the costs awarded by the clerk will be reduced by $225,082.73 for a total award of $40,453.19.

BACKGROUND

        After originally prevailing in this action, Trek sought $318,033.46 in costs. (Dkt. #222.) On September 12, 2014, the Clerk of Court taxed costs against Split Pivot in the amount of $265,535.92. (Dkt. #236.) In doing so, the Clerk made the following specific reductions in Trek's requested costs:

---

[1] Split Pivot had filed a contemporaneous motion to stay this court's consideration of costs pending completion of its appeal to the Federal Circuit (dkt. #239), but because the Federal Circuit has now ruled, that motion will obviously be denied as moot.

- **$2,321.40 for deposition exhibits**. The Clerk found it was "objectively unreasonable to force plaintiff to pay $2,321.40 for a copy of a book when defendant is the party who put the book into evidence."[2]

- **$48,459.47 for bicycles manufactured by Trek for use as exemplification exhibits at trial.** The Clerk found that Trek had not established that those exhibits were "necessary, that the costs sought were actually incurred or that the bicycles could not have been returned to inventory and sold."

- **$4,038.07 for claimed electronic discovery costs.** The Clerk found that Trek could not "recover the cost of training, consulting fees, or charges for hard and USB drives provided by the vendor."

At the same time, the Clerk allowed a number of other costs over Split Pivot's objections. For instance, the Clerk awarded Trek its costs for videotaping depositions consistent with *Little v. Mitsubishi Motors North America, Inc.*, 514 F.3d 699, 701 (7th Cir. 2008). The Clerk also concluded that Trek had provided sufficient records to support its request for copying costs and awarded Trek the majority of its costs for electronic discovery, citing *Novozymes A/S v. Danisco A/S*, No. 10-cv-251-bbc, at dkt. #1006 (W.D. Wis. Mar. 11, 2013). With the exception of the latter costs, which will be reduced to include the electronic equivalent of making copies consistent with now prevailing case law in this and other circuits, the clerk's award will be upheld.

---

[2] Trek points out in its brief in opposition that the total costs as taxed were not actually reduced by this $2,321.40 sum. (*See* dkt. #236.) This error will be addressed in the court's final award of costs by reducing the $26,808.83 for transcripts to $24,487.43 as contemplated by the Clerk of Court's notes.

2

OPINION

Federal Rule of Civil Procedure 54(d) states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be allowed to the prevailing party." This "creates a presumption that the prevailing party should recover costs." *McGill v. Faulkner,* 18 F.3d 456, 458 (7th Cir. 1994). In light of this presumption, "a denial of costs to a prevailing party must be accompanied by an explanation of the district court's 'good reasons' for this denial." *Krocka v. City of Chi.,* 203 F.3d 507, 518 (7th Cir. 2000). There is no dispute that Trek is the prevailing party in this litigation. Thus, the court must consider: (1) whether the costs to which Split Pivot objects are taxable under 28 U.S.C. § 1920; and (2) whether the amounts are "reasonable and necessary." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.,* 924 F.2d 633, 642 (7th Cir. 1991).

I. **Claim of Indigency**

As a preliminary matter, Split Pivot argues that the court should decline to tax *any* costs against it due to indigency. While the presumption in favor of costs "may be overcome by a showing of indigency," it is "within the discretion of the district court to consider a plaintiff's indigency in denying costs under Rule 54(d)." *Badillo v. Cent. Steel & Wire Co.,* 717 F.2d 1160, 1165 (7th Cir. 1983). The Seventh Circuit directs that this be done in a two-step process. "First, the district court must make a threshold factual finding that the losing party is 'incapable of paying the court-imposed costs at this time or in the future.'" *Rivera v. City of Chi.,* 469 F.3d 631, 635 (7th Cir. 2006) (quoting *McGill v. Faulkner,* 18 F.3d 456, 460 (7th Cir. 1994)). "Second, the district court should consider the

amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case when using its discretion to deny costs." *Id.*

Trek argues that the indigency exception does not apply to corporate defendants like Split Pivot at all, citing *Fehribach v. Ernst & Young LLP*, 493 F.3d 905 (7th Cir. 2007). In *Fehribach*, the trustee of Taurus Foods, Inc., argued that the district court should not have taxed costs because it was indigent, as demonstrated by its entry into bankruptcy. In rejecting the trustee's argument, the Seventh Circuit stated that "to allow [corporations] to escape paying costs on grounds of indigency would blur the distinction between individuals and corporations." *Id.* at 913. "For these reasons, it is indeed better to award costs as of course (which is what [Rule 54(d)] says) and leave to bankruptcy the question whether collection is possible." *Id.* (internal quotation marks omitted) (quoting *Rivera*, 469 F.3d at 637 (Easterbrook, J., concurring)).

At least one district court in this circuit has interpreted the *Fehribach* holding as foreclosing entirely the application of the indigence exception to corporations. *See Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machs. Corp.*, 249 F.R.D. 313, 316 (N.D. Ill. 2008). Whether this is a correct reading or not, *Fehribach* at least stands for the proposition that a post-litigation award of costs is the wrong time and place to take up the question of a corporation's indigency in the ordinary course.

Here, Split Pivot represents that it has incurred significant expenses throughout this litigation that far outstrip its revenues and will likely be forced to declare bankruptcy should the court tax costs. In light of *Fehribach,* which after all concerned a situation where the corporation was already *in bankruptcy*, there would appear little basis to absolve Split Pivot from all costs Trek incurred in this litigation based on Split Pivot's claim of limited financial

4

resources.[3] Instead, the court will award costs here under Rule 54(d) and "leave to bankruptcy the question whether collection is possible," if and when Split Pivot actually seeks protection. *Fehribach,* 493 F.3d at 913.

Alternatively, Split Pivot asks the court to stay enforcement of any cost award based on its claimed inability to pay, apparently on the theory that perhaps it will be able to accumulate the capital to pay those costs in the future. Given Split Pivot's representation in the very same brief that it "lacks the capability now or in the foreseeable future to pay any costs judgment" (Pl.'s Objs. (dkt. #243) 7), and its conclusion that "[r]egardless of the amount taxed, Split Pivot has no ability to pay, and Trek likely will never collect a penny" (*id.* at 18), the court finds this request puzzling to say the least. In any event, the court declines to stay execution of the costs judgment indefinitely on the hope that -- contrary to its own representations -- Split Pivot will be better able to pay the costs of this suit at some point in the future. Regardless, proceedings to execute on specific assets in or out of bankruptcy is a far better point to address such claims, especially since the former would afford Split Pivot an automatic stay if filed in good faith.

## II.    Categories of Costs

Accordingly, the court turns to Split Pivot's objections to the individual categories of costs that Trek claimed and was awarded by the Clerk of Court.

---

[3] Split Pivot also seeks to characterize Trek as a "massive multi-national corporation," in contrast to itself, "a small entity with one employee." (Pl.'s Objs. (dkt. #243) 4-5.) The Seventh Circuit has held, however, that "the parties' relative wealth is not a good reason to deny costs to the winner[.]" *Fehribach*, 493 F.3d at 913 (quoting *Rivera*, 469 F.3d at 637 (Easterbrook, J., concurring)).

A. **Depositions**

Split Pivot challenges the award of $26,808.83 for depositions and related costs. While there is no dispute that deposition costs are authorized by § 1920, *see Little*, 514 F.3d at 701, Split Pivot argues that those expenses were not "reasonable and necessary." As set forth in footnote 2, *supra,* the court has already reduced that sum to $24,487.43 consistent with the Clerk of Court's notes, but Split Pivot asks the court to further reduce the award by excluding costs of videotaping depositions of witnesses who were not shown to be "unavailable" for trial, a category that, in Split Pivot's view, encompasses all witnesses except Erick Auger. *See, e.g., Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 976 (N.D. Ill. 2010). According to Split Pivot, Auger is the only witness for whom video-recording was justified, because he resides outside of the United States.[4] Trek responds that it was entitled to recover costs for video-recording depositions under *Little*, and that it videotaped depositions as necessary to ensure they were complete and accurate, as well as to highlight the most persuasive portions for the jury.

The court agrees with Trek. The Seventh Circuit held in *Little* that the prevailing party may recover costs for both video-recording and stenographic transcription of a deposition, so long as the transcripts were "necessarily obtained for use in the case." 514 F.3d at 701-02 (quoting 28 U.S.C. § 1920(2)). Likewise, this court has previously recognized that a party is entitled to review a taped deposition to ensure it is complete and determine which portions would be most persuasive to a jury. *Frazier v. Layne Christensen Co.*, No. 04-C-315-C, 2007 WL 1453133, at *2 (W.D. Wis. Feb. 22, 2007).

---

[4] One other witness for whom Trek requested video-recording costs, Tony Foale, also resides outside the U.S., but Split Pivot would downplay this fact, representing that as Split Pivot's technical expert, he was "obviously" an expected witness at trial.

6

Contrary to Split Pivot's suggestion, there is no blanket rule excluding video-recording costs for all witnesses residing within the United States. As support, Split Pivot cites *Engate, Inc. v. Esquire Deposition Services LLC,* No. 01 C 6204, 2006 WL 695650 (N.D. Ill. Mar. 13, 2006), but that court rejected video-recording costs for certain witnesses because the defendants "desire[d] to use videotaped depositions for *impeachment*," not because those witnesses resided in the United States. *See id.* at *2. Indeed, Split Pivot's distinction makes little sense since many witnesses may reside within the United States and still be outside the court's subpoena power under Federal Rule of Civil Procedure 45.

Split Pivot's objection might have had more traction if, for example, Trek had sought video-recording costs indiscriminately, but Trek did *not* seek costs to videotape each and every deposition, nor does Split Pivot argue that Trek videotaped the depositions of witnesses without any intent to introduce their testimony at trial. Rather, Trek represents without contradiction that all videotaped depositions were noticed in advance and taken of witnesses who resided outside this court's authority to compel attendance at trial.

Split Pivot next argues that Trek was not entitled to recover costs related to rough drafts, exhibits, court reporter expenses, e-transcripts, shipping and handling and other assorted fees. Split Pivot asserts that these incidental costs are "clearly untaxable," citing as support *BASF AG v. Great American Assurance Co.*, 595 F. Supp. 2d 899, 904 (N.D. Ill. 2009), which found "[c]osts related to materials such as Min–U–Scripts, ASCII diskettes, and administrative fees are generally not recoverable unless the movant shows that they were reasonably necessary for the litigation." In response, Trek cites this court's decision in *Illumina, Inc. v. Affymetrix, Inc.*, No. 09-cv-277-bbc, at dkt. #243 (W.D. Wis. May 11, 2011), which permitted recovery of rough drafts and expedited transcripts. Trek further points out

7

that the Seventh Circuit has similarly upheld the award of costs incidental to the taking of depositions, such as court reporter expenses and delivery charges. *See Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995); *but see Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006) ("However, Smith should not have been taxed the delivery costs for these depositions.").

As Split Pivot itself acknowledges, this was a complex patent lawsuit,. The case entailed the taking of more than twenty depositions, most of which appear to have been noticed by Split Pivot. In combination with this court's typically demanding case calendar, it was not unreasonable for Trek to have sought rough drafts of certain transcripts or expedited transcripts to prepare for summary judgment and trial timely. Indeed, Trek credibly represented in its original brief on the bill of costs that those expenditures were incurred only when necessary to comply with the court's schedule.[5] *E.g., Corder v. Lucent Techs. Inc.*, 162 F.3d 924, 928-29 (7th Cir. 1998) (upholding costs of expedited transcripts as "justified given the discovery and motion schedule").[6]

Finally, Split Pivot objects to deposition costs pertaining to Counts III and IV, which were dismissed by stipulation of the parties without costs to either side. (*See* dkt. #199.) However, Trek did not seek any costs related to the deposition of Matthew Harvey, whose deposition related solely to Counts III and IV, and Split Pivot has identified no other

---

[5] Trek sought the costs of rough draft transcripts for eleven depositions and expedited transcripts for one, the deposition of David Weagle. (Decl. of Truscenialyn Brooks Ex. 1 (dkt. #224-1) ECF 2.)

[6] Dispositive motions were initially due July 26, 2013 (dkt. #18), later moved to August 9 (dkt. #97). Trial was set for January 27, 2014. (Dkt. #18.) The dates for which rough draft transcripts were sought range from May 5, 2013 (about two and a half months before dispositive motions were due and just one month before the deadline for disclosure of liability experts), to December 6, 2013 (a month and a half before trial and just ten days before pretrial submissions were due). (*See generally* dkt. #224-1.) Given the sophisticated nature of expert witness disclosures and summary judgment submissions in patent cases, the court has little trouble finding Trek's general representation credible.

witness whose deposition (much less a portion of whose deposition) was not reasonably necessary to Trek's prosecution of its other claims. Without specific, persuasive grounds for the court to do such parsing, Split Pivot's request for a further reduction in the deposition costs will be denied.

### B. Copy Costs

Split Pivot also challenges Trek's copying costs as excessive. As with the costs of depositions, however, it does not dispute that copy costs are taxable, nor could it. *See* 28 U.S.C. § 1920(4) (prevailing party entitled to "the costs of making copies of any materials where the copies are necessarily obtained for use in the case"). Rather, Split Pivot contends those costs were not "reasonable and necessary."

As an initial matter, Split Pivot argues that Trek submitted no evidence to support four of its invoices, necessitating a $322.73 reduction. Again, quoting the Seventh Circuit's *Northbrook* decision, Trek responds that it "was not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs"; rather, it was only "required to provide the best breakdown obtainable from retained records." 924 F.2d at 643. Given that these costs appear to be part of the normal course of litigation and are not in any way excessive in a case of this magnitude, the court exercises its discretion in favor of awarding the full amount requested.

Split Pivot further argues that Trek's photocopying "regularly involve[d] the duplication of far more than two copies." In *Haroco, Inc. v. American National Bank and Trust Co. of Chicago*, 38 F.3d 1429 (7th Cir. 1994), the Seventh Circuit upheld expenses for two sets of copies. *Id*. at 1441. In *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681 (7th Cir. 2000), the Seventh Circuit similarly observed that "two copies of every document filed

9

with the court or provided to opposing counsel makes sense; it is easy to see why each is useful." *Id*. at 685. However, the court went on to observe, "[f]ive or six copies of everything for the apparent convenience of a platoon of lawyers at a large defense firm is harder to justify as the sort of outlay that may be shifted to one's adversary." *Id.*

The latter observation in *Kulumani* could have been written for this case given that some of the invoices Trek submitted refer to copies "for team" or note that six sets were ordered. (*E.g.*, Decl. of Truscenialyn Brooks Ex. 3 (dkt. #224-3) ECF 8 ("6 sets" of invalidity contentions, totaling $3,304.26); ECF 10 ("6 sets" of supplemental infringement contentions "for team"); ECF 17 ("8 sets" of rebuttal expert reports "for team," totaling $558.73); ECF 19 ("7 sets" of summary judgment binders "for team" totaling $1,448.72); ECF 26 ("5 sets" of Ludington Report "for team" totaling $152.24); ECF 29 ("5 sets" of Bero Report "for team" totaling $770.42); ECF 34 ("6 sets" of Bero Reports totaling $283.59).) If anything, the observation by the Seventh Circuit in *Kulumani* in 2000 is more telling now, given the increased availability and use of computers to transmit and review documents by lawyers, paralegals, experts, lay witnesses, clients and even courts. While in patent litigation like this one, multiple hard copies might be necessary for a particular person (whether a Luddite lawyer, reluctant witness or tradition bound judge or clerk's office), making 6, 7 or 8 hard copies "for team" falls on the far end of the convenience spectrum.[7] Accordingly, the court will cut Trek's invoices for more than four sets of copies that Split Pivot identifies. (Pl.'s Objs. (dkt. #243) 13 n.4.)

---

[7] This court in particular has long since abandoned any practice of mandating the filing or use of hard copies, even at trial. As always in this jurisdiction, the court encourages the parties to discuss best practices for that case with each other and, if necessary, with the court, as early as the preliminary pretrial conference.

10

Finally, Split Pivot contends that Trek has not reduced its copy costs to exclude those related to Counts III and IV. In response, Trek represents that to its knowledge, none of the submitted invoices were "directed *solely* to the dismissed counts." (Decl. of Truscenialyn Brooks (dkt. #254) ¶ 17 (emphasis added).) This general representation is more troubling than Trek's request for undifferentiated deposition costs, since deposition costs are less easily divisible between claims *and* more easily identified by Split Pivot. At the same time, Split Pivot again gives no guidance as to how this court might go about differentiating these copy costs, whether in terms of (1) how many invoices might have wholly or partially involved Counts III and IV, (2) how many documents were likely produced for Counts III and IV alone, or (3) what would be a fair reduction in costs on a percentage or other basis.

Even if the court were to make some sort of reduction, it would be relatively small, since the patent claims were certainly the focus of discovery throughout this litigation. Moreover, most of the invoices that have explanations appear to relate *solely* to the patent claims. For example, no one moved for summary judgment on any of the trade-secret-related claims; and there was only one deposition related solely to that claim.

With no meaningful guidance from Split Pivot, any cut by the court would be wholly arbitrary, except perhaps if based on the same ratio of depositions devoted solely to these counts as compared to the others (1/23). Accordingly, Trek's total copy costs will be reduced by the same ratio.

## C. Electronic Discovery

The court has saved for last what is by far the largest cost category of disputed costs: Split Pivot's objections to the award of $225,180.57 incurred by Trek as part of its e-

discovery efforts. Split Pivot urges the court to adopt the analysis of the Third Circuit in *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012), holding that with respect to electronically stored information, § 1920(4) authorizes shifting of costs only for "the scanning of hard copy documents, the conversion of native files to TIFF, and the transfer of VHS tapes to DVD." *Id.* at 171. In so holding, the Third Circuit rejected any suggestion that "Congress intended to shift all the expenses of a particular form of discovery - production of ESI - to the losing party." *Id.* That court also observed that "[a]lthough there may be strong policy reasons in general, or compelling equitable circumstances in a particular case, to award the full cost of electronic discovery to the prevailing party, the federal courts lack the authority to do so, either generally or in particular cases, under the cost statute." *Id.*

The Third Circuit is hardly alone in this regard. *See CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320 (Fed. Cir. 2013); *Country Vintner of N.C., LLC v. E. & J. Gallo Winery*, 718 F.3d 249 (4th Cir. 2013); *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 52 F. Supp. 3d 893 (N.D. Ill. 2014) (following *Race Tires* and *Country Vintner*, rejecting costs incurred for "data loading, data processing, and de-duplication and culling"); *In re Text Messaging Antitrust Litig.*, No. 08 C 7082, 2014 WL 4343286, at *3 (N.D. Ill. Sept. 2, 2014) ("The Court finds the analysis in *Race Tires* persuasive and will consider the parties' arguments on the taxability of e-discovery costs using that analysis.").

In contrast, this court expressly declined to adopt the *Race Tires* approach wholesale in *Novozymes* "in the absence of more definitive authority." Our court is also not alone in this regard, but certainly in the distinct minority. *See Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.*, 2 F. Supp. 3d 1306, 1317 (N.D. Ga. 2014) ("In fact, the Court

12

searched high and low for a case that contravenes *Race Tires*," and found but two: *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, No. C 09–5939 PJH, 2012 WL 1610979, at *4 (N.D. Cal. May 8, 2012) ("tak[ing] note" of *Race Tires* but declining to follow it); and *In re Online DVD*, 2012 WL 1414111, at *1).

As an administrative matter, there is also much to be said for the relatively narrow line drawn by the Third Circuit in *Race Tires*, even if its demarcation is a bit more ephemeral in application than suggested by most courts. For all the courts having examined this question, the issue comes down to whether ESI-related costs qualify as fees for "exemplification" or the "making of copies."[8] The Third Circuit noted a split of opinions as to whether the term "exemplification" should be read narrowly or broadly. *Compare Kohus v. Cosco, Inc.*, 282 F.3d 1355, 1361 (Fed. Cir. 2002) (predicting that Sixth Circuit would apply the narrow "legal definition" of exemplification as "an official transcript of a public record, authenticated as a true copy for use as evidence"), *with Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000) (interpreting "exemplification" as "the act of illustration by example," a definition "broad enough to include a wide variety of exhibits and demonstrative aids"); *see also Summit Tech., Inc. v. Nidek Co., Ltd.*, 435 F.3d 1371, 1376-77 (Fed. Cir. 2006) (collecting these and similar cases).

The *Race Tires* court held, however, that it did not matter whether Congress intended a narrow or broad definition of "exemplification," because the ESI-related costs "did not produce illustrative evidence *or* the authentication of public records." 435 F.3d at

---

[8] As the Third Circuit noted in its review of the history of § 1920(4) in particular, the provision originally authorized the taxation of "exemplifications and copies of papers necessarily obtained for use on trial." *Race Tires*, 674 F.3d at 165 (quoting Fee Act of 1853, ch. 80, 10 Stat. 168 (1853)). In 1948, this language was broadened to include exemplification and copy fees necessarily obtained for use in the case. *Id*. Then, in 2008, the "statute's reference to 'copies of papers' was replaced with 'the costs of making copies of *any* materials.'" *Id*. (quoting Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-406, § 6, 122 Stat. 4291 (2008) (emphasis added)).

166 (emphasis added). Instead, the Third Circuit considered whether ESI-related costs could be considered the "costs of making copies." In doing so, the court raised what is a common complaint with respect to awarding costs from ESI vendors: their invoices were "notable for their lack of specificity and clarity as to the services actually performed." *Id.* at 166. With the guidance of the parties' briefing, however, the Third Circuit went on to "identify the following general categories of services comprising the vendors' electronic discovery services: collecting and preserving ESI; processing and indexing ESI; keyword searching of ESI for responsive and privileged documents; converting native files to TIFF; and scanning paper documents to create electronic images." *Id.* at 167.

With these categories in mind, the Third Circuit held that "the conversion of native files to TIFF (the agreed-upon default format for production of ESI) and the scanning of documents to create digital duplicates are generally recognized as the taxable 'making copies of materials.'" *Id.* (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009); *BDT Prods. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 420 (6th Cir. 2005); *Brown v. McGraw-Hill Cos.*, 526 F. Supp. 2d 950, 959 (N.D. Iowa 2007)). In contrast, the *Race Tires* court criticized opinions finding other categories of electronic discovery costs taxable because of the "'indispensability' of the[se] services to the ultimate act of production of intelligible electronic documents." 674 F.3d at 168.

> The decisions that allow taxation of all, or essentially all, electronic discovery consultant charges, such as the District Court's ruling in this case, are untethered from the statutory mooring. Section 1920(4) does not state that all steps that lead up to the production of copies of materials are taxable. It does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional. It does not say that activities that encourage cost savings may be taxed. Section 1920(4) authorizes awarding only the cost of making copies.

14

*Id.* at 169 (footnote omitted).

In particular, the Third Circuit analogized the steps of "processing" ESI to steps previously required in complex litigation to prepare documents for production in the pre-digital era -- paper files had to be located and collected (or a reviewer had to travel to the files), the documents had to be reviewed to identify those that were relevant and the relevant documents had to be screened for privilege. *Id*. As such, the court found none of those activities were taxable. *Id.* Thus, the *Race Tires* court held that most electronic discovery costs "simply do not amount to 'making copies,'" and the court was "consequently limited to shifting only those costs explicitly enumerated in § 1920." *Id.* at 170-71.

In *Country Vintner*, the Fourth Circuit expressly adopted the *Race Tires* approach, finding the decision persuasive and properly based on "the statue's history, its plain language and the Supreme Court's narrow contemporary interpretation of the costs taxable under § 1920." 718 F.3d at 260. Accordingly, it found "only the conversion of native files to TIFF and PDF formats, and the transfer of files onto CDs, constituted 'making copies' under § 1920(4)," rejecting the theory that ESI-processing costs were similarly taxable. *Id.* at 261. In so holding, the Fourth Circuit also rejected the argument that the ESI processing charges were fees for exemplification, again agreeing with the Third Circuit that under either a narrow or broad definition, those charges did not qualify. *Id.* at 262.

In *CBT Flint*, the Federal Circuit interpreted Eleventh Circuit law and the history of § 1920 in reaching the similar conclusion that "only the costs of creating the produced duplicates [of electronic documents] are included, not a number of preparatory or ancillary costs commonly incurred leading up to, in conjunction with, or after duplication." 737 F.3d at 1328. As a result, the Federal Circuit allowed costs associated with converting

documents to a production format, or with imaging the source and extracting documents while preserving *metadata*, as "fairly considered costs of making copies of the requested documents," so long as they are necessary to make copies of information *required to be produced*. *Id.* at 1329. In contrast, costs associated with preparing to copy (in *CBT Flint*, preparing a plan to copy source code securely) were not recoverable, nor were costs like "project management, keyword searching, 'statistical previews,' 'auditing and logging of files and ensuring compliance with Federal Rules' and 'extraction of proprietary data,'" since they were not copy costs but instead "part of the large body of discovery obligations . . . that Congress has not included in section 1920(4)." *Id.* at 1331. The Federal Circuit also rejected the award of costs connected to a new data-hosting server incurred "for convenience"; the costs of training and meeting, even when related to the copying process; and the costs of "deduplication" (*i.e.*, eliminating multiple copies of the same document in data sets). *Id.*

The *CBT Flint* court *did* allow the recovery of costs for the creation of "load files," which indicate where individual pages or files belong together and show where documents begin and end, since "a request for documents is properly understood as a request that they be produced in a way that separates them to indicate where one ends and another begins." *Id.* at 1332. Overall, the Federal Circuit adhered to the *Race Tires* opinion, except as to metadata extraction and hard-drive imaging:

> It seems to us that there is no good reason, as a default matter, to distinguish copying one part of an electronic document (i.e., the part that is visible when printed) from copying other parts (i.e., parts not immediately visible) when both parts are requested.

*Id.* at 1335.

The Ninth Circuit in *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 914 (9th Cir. 2015), took up the question next and "[found] persuasive the reasoning of the Third Circuit in *Race Tires*, the Fourth Circuit in *Country Vintner*, and the Federal Circuit in *CBT Flint*[.]" *Id.* at 925-26. Analyzing the historical development and narrow reach of § 1920(4), the court rejected costs claimed for "keywording" activities, concluding that this filtering effort was "akin to a person (lawyer, paralegal, or otherwise) mechanically reviewing a stack of documents and (based upon criteria supplied by a lawyer) separating them into two piles: one consisting of documents that might potentially be produced, and the other consisting of documents that will not be produced." *Id.* at 930-31.[9]

Finally, in *Colosi v. Jones Lang LaSalle Americas, Inc.*, 781 F.3d 293 (6th Cir. 2015), the Sixth Circuit confronted the limited question of whether imaging a hard drive constitutes "making copies" under § 1920(4). While the Sixth Circuit did *not* analyze the broader question of the interaction between ESI costs and § 1920(4), with one exception, it at least implicitly suggested that most of the *Race Tires* court's analysis was appropriate. *Id.* at 298 (noting that the Third Circuit had "rightly worried over expanding the scope of § 1920 to include expensive electronic discovery procedures not contemplated by Congress").

The exception was with respect to the recoverability of costs for imaging a hard drive:

> Imaging a hard drive falls squarely within the definition of "copy," which tellingly lists "image" as a synonym. And the name "imaging" describes the process itself. Imaging creates "an identical copy of the hard drive, including empty sectors." *CBT Flint*, 737 F.3d at 1328 (quoting The Sedona Conference, The Sedona Conference Glossary: E–Discovery & Digital

---

[9] Other challenges to costs in *Online DVD-Rental* were resolved on grounds not relevant to this dispute -- assuming without deciding that data uploading was "making copies," but rejecting those costs in the case before it because they were not proven to be necessarily obtained for use in the case. *Id*. at 929-30. The Ninth Circuit also remanded two categories of costs ("professional services" and "native review processing") for further consideration because it was unclear whether those costs were properly taxed given the breadth of the activities within each category.

> Information Management 27 (Sherry B. Harris et al. eds., 3d ed. 2010)). The image serves as a functional reproduction of the physical storage disk. From the image file, one can access any application file or electronic document on the hard drive with all that document's original properties and metadata intact. Id. If not actually made or formed in the image of the hard drive, we certainly regard it as such. See 3 Oxford English Dictionary 915. Thus, a plain reading of the statute authorizes courts to tax the reasonable cost of imaging, provided the image file was necessarily obtained for use in the case. See *CBT Flint*, 737 F.3d at 1329–30; id. at 1334 n.1 (O'Malley, J., concurring in part and dissenting in part).

*Colosi,* 781 F.3d at 297 (6th Cir. 2015).

Despite the consensus building among other circuits, the Seventh Circuit Court of Appeals has yet to weigh in on the recoverability of ESI costs.  This is also true of both district courts in Wisconsin, at least after this court's 2000 decision in *Novozymes.*  In contrast, a few, relatively recent decisions from the Northern District of Illinois have applied the general approach of *Race Tires.  See, e.g.*, *Life Plans*, 52 F. Supp. 3d at 902; *In re Text Messaging,* 2014 WL 4343286, at *3.

Since this court's decision in *Novozymes,* most district courts and *all* circuit courts have moved in the direction of interpreting narrowly the meaning of "making copies" in § 1920(4) in the context of electronic discovery, although some may disagree with respect to the inclusion of specific costs (*e.g.*, metadata and hard drive imaging).  Since the court finds this consensus persuasive as outlined above, and as important, finds it to reflect a fair reading and application of the language of § 1920(4), this court, too, adopts the *Race Tires* approach, with the caveat that costs of copying metadata and hard drives be included for reasons stated well in *CBT Flint* and *Colosi*.  Accordingly, the court will reduce the e-discovery costs awarded by the clerk to include only costs for Bates stamping, shipping and

18

delivery of electronic documents, native file and email conversion, and TIFF image creation and conversion.[10]

ORDER

IT IS ORDERED that:

1) Split Pivot's objections to Trek's bill of costs (dkt. #242) is DENIED IN PART AND GRANTED IN PART consistent with this opinion above;

2) Split Pivot's motion for stay (dkt. #239) is DENIED as moot;

3) The Clerk of Court is directed to amend the judgment to award Trek $40,453.09 in costs.

Entered this 31st day of December, 2015.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge

---

[10] The court includes the electronic assignment of Bates stamps, since this has often been a part of paper copying costs to insure an orderly and controlled production of documents. Similarly, the court includes the nominal costs of shipping and delivery of electronic documents, since it is far less costly than requiring counsel to come to the offices of the opposing party or its counsel to physically inspect and designate documents for copying, as would have been the historic practice for hard copies. However, the court exercises its discretion in declining to award delivery costs for CDs and DVDs, since a charge of $20 to $25 per CD or DVD appears to be objectively unreasonable.